Filed 11/22/23  P. v. Curry CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C090409 |
| Plaintiff and Respondent, | (Super. Ct. No. 17CF03707) |
| v. | OPINION ON TRANSFER |
| DAVID HENRY CURRY, | |
| Defendant and Appellant. | |

After a jury found him guilty of robbery, and before the trial court sentenced him to state prison for 40 years to life and imposed various costs, defendant David Henry Curry sought to file a motion for mental health diversion pursuant to Penal Code section 1001.36.[1]  The trial court ruled the motion was untimely and did not consider it. Defendant appealed, arguing: (1) the trial court erred by denying as untimely his request for mental health diversion; (2) if the diversion request was untimely, trial counsel

---

[1]  Undesignated statutory references are to the Penal Code.

provided ineffective assistance; and (3) the trial court violated due process principles by imposing costs without determining defendant's ability to pay.

This court: (1) conditionally reversed the judgment and remanded the matter to the trial court with directions to hold a diversion eligibility hearing under section 1001.36; (2) ruled defendant's claim of ineffective assistance of counsel was therefore moot; and (3) affirmed the imposition of costs.

Defendant filed a petition for review of this court's affirmance of the imposition of costs. Our Supreme Court granted that petition and deferred further action pending disposition in another case. After issuing its opinion in *People v. Braden* (2023) 14 Cal.5th 791, the Supreme Court transferred the matter back to us with directions to vacate this court's decision and reconsider the cause in light of *Braden*. We vacated the prior decision and reconsidered the matter in light of *Braden* and the parties' supplemental letter briefs.

The trial court did not err by denying as untimely defendant's post-verdict motion for mental health diversion. And the record in this direct appeal precludes a finding of ineffective assistance of counsel. Accordingly, we will affirm the judgment in its entirety.

## I.  BACKGROUND

On June 24, 2016, defendant entered a bank in Chico during business hours, tossed a note demanding money at a bank employee, and then pointed a firearm at her. Defendant left the bank with money the employee gave to him.

Law enforcement officers were unable to identify defendant as the culprit of the Chico bank robbery until he committed another bank robbery in Tacoma, Washington in January 2017.

In July 2017, a Butte County deputy district attorney filed a criminal complaint, charging defendant with second degree robbery and further alleging that defendant

suffered two or more prior serious or violent felonies for purposes of sections 667 and 1170.12, subdivision (b).

On June 5, 2018, the trial court declared a doubt as to defendant's competence and suspended criminal proceedings.

On June 27, 2018, the statute at issue here (§ 1001.36) became effective, creating a pretrial diversion program for certain defendants with mental health disorders. (Stats. 2018, ch. 34, § 24.)

A July 2018 psychological evaluation report concluded that defendant had the mental capacity to assist in his own defense. The "interview" section of the report noted that defendant "presented no symptoms of mental illness in the interview." The "diagnosis" section of the report concluded that defendant suffered "mild symptoms of situation related anxiety and depression," which "anxiety did not seem abnormal . . . given" defendant's "custody issues" arising out of his belief that his wife illegally took his daughter out of the country. The same section noted that defendant's "[p]ersonality was not assessed."

The report also noted that while defendant "acknowledged the idea of diversion," he "insisted he did not do the crime" and "hoped to have a jury trial" to show " 'this was not me.' "

After reviewing the report, the trial court found defendant competent and reinstated criminal proceedings.

Later in July 2018, defendant obtained new counsel.

In September 2018, the information was filed, containing the robbery charge and prior felony allegations.

In March 2019, a jury found defendant guilty of the robbery, and the trial court later found true that defendant suffered three prior serious felony convictions alleged.

3

Several months after the jury's verdict, defendant indicated to his counsel that he wished to represent himself, and in June 2019, the trial court granted defendant's motion to do so.[2]

At a July 2019 hearing, the trial court denied several post-trial motions that defendant filed as a pro per (including a motion for a new trial) that are not germane to the issue before us. Also at the hearing, defendant told the trial court that he wanted to "file . . . other . . . motions," including a motion for mental health diversion pursuant to section 1001.36. The trial court concluded: "That's a pretrial motion, so you have to request that pretrial. You elected to go to a jury trial, so that's . . . not timely."

Defendant replied that he raised the issue with his trial counsel "well in advance," but "she never even investigated it, you know. My mental health at the time was brought up."

The trial court wondered aloud whether the pretrial diversion law was in effect "at the beginning of [defendant's] case," and defendant replied that the law was effective in June 2018, before he hired his last attorney. The trial court responded: "Okay. Well, I'm going to deny that. So th[e] . . . motion[] [is] not timely, so I'm not going to have you file [it]."

A probation officer's August 2019 presentencing report noted that defendant: (a) indicated that he was diagnosed with severe depressive disorder in " 'early 2000,' " and (b) "disclosed that his daughter was abducted by her mother . . . the day prior to" the Chico robbery. The report continued: "[Defendant] spoke of his heartbreak over his daughter being transported [out of the country], without his knowledge or permission, and not being in contact with her."

---

[2] Pursuant to *Faretta v. California* (1975) 422 U.S. 806, 819.

4

Attached to the report was a written statement and supporting documents that defendant submitted to the probation officer. Included in defendant's submission was a copy of a letter from the Office of Children's Issues at United States Department of State, referencing the "case that was opened on July 7, 2016, on behalf of [defendant's] child."

At the August 2019 sentencing hearing, the trial court said: "I am very familiar with [defendant's] . . . situation and what [he was] going through in relation to [his] daughter . . . . I can only imagine what a horrific situation that is."

Later at the hearing, defendant told the trial court that, when his daughter "was taken from [him]," he "had nervous breakdowns every single day and, at the time of th[e] crime, [he] lost touch with reality."

Ultimately, the trial court sentenced defendant to an indeterminate term of 25 years to life for the robbery (pursuant to the three strikes law, section 667, subdivision (e)(2)), consecutive to a determinate term of 15 years (five-year enhancements for each of the three prior serious felonies, pursuant to section 667, subdivision (a)).

Regarding costs, in addition to victim restitution, the trial court imposed a $300 restitution fine (§ 1202.4), a suspended $300 parole revocation fine (§ 1202.45), a $40 court operations fee (§ 1465.8), a $30 conviction assessment fee (Gov. Code, § 70373), and $39 in additional fines, fees, and assessments, for a total of $409.

Defendant timely appealed.

## II. DISCUSSION

### A. *Mental Health Diversion Under Section 1001.36*

Section 1001.36 authorizes pretrial diversion for defendants with qualifying mental disorders. (Stats. 2018, ch. 34, § 24; § 1001.36, subd. (b)(1).) "The statute provides: 'As used in this chapter . . . [¶] . . . "Pretrial diversion" means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to

5

allow the defendant to undergo mental health treatment,' subject to specified conditions." (*Braden, supra*, 14 Cal.5th at p. 801.)

B.      Braden

In a five-to-two decision, our Supreme Court in *Braden* recently resolved a three-way split in the California appellate courts regarding the latest point in a criminal proceeding ("until adjudication") at which a defendant may request mental health diversion under section 1001.36.  Our Supreme Court held "the request must be made before attachment of jeopardy at trial or the entry of a guilty or no contest plea, whichever occurs first."  (*Braden, supra*, 14 Cal.5th at p. 800.)

In a jury trial, jeopardy attaches when the jury is impaneled and sworn.  (*Curry v. Superior Court* (1970) 2 Cal.3d 707, 712; *People v. Whitaker* (2013) 213 Cal.App.4th 999, 1009.)  Here, defendant's jury was impaneled and sworn in March 2019, and defendant first expressed his desire to seek mental health diversion to the trial court at a hearing in July 2019.  Thus, under *Braden*, the trial court properly denied as untimely defendant's motion for mental health diversion.

In his supplemental letter brief, defendant does not discuss *Braden,* implicitly abandoning any claim the trial court erred when it denied his motion for mental health diversion.  Instead, defendant asks us to address the merits of his claim of ineffective assistance of trial counsel "as a result of trial counsel's failure to request mental health diversion under . . . section 1001.36."

C.      *Assistance of Counsel*

In his original briefing,[3] defendant contends trial counsel was ineffective because, "despite . . . extensive evidence of [his] mental illness and [his] repeated requests for trial counsel to ask the trial court for mental health diversion, trial counsel completely failed

---

[3] Defendant does not present additional argument on the issue in his supplemental letter brief.

to request diversion." For support of the notion he repeatedly asked trial counsel to request mental health diversion, defendant cites the transcript of the July 2019 hearing and a July 2019 pro per filing.

In their supplemental letter brief, the People contend defendant has failed to establish the ineffectiveness of trial counsel, in part because the record is silent regarding why defense counsel did not request mental health diversion and there are "various rational tactical purposes" that might explain a decision not to request diversion.

To establish a claim of ineffective assistance of counsel, defendant must show: (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) a reasonable probability that, but for that deficient representation, the outcome of the proceeding would have been different. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai, supra*, 57 Cal.4th at p. 1009.)

As our Supreme Court has observed, "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding. [Citations.] The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a

particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.)

The record before us poses such practical constraints and precludes us from finding ineffective assistance of counsel, because we can discern at least one plausible legitimate reason why trial counsel may not have requested diversion: defendant may have insisted on going to trial. (Cf. *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 [reversing the appellate court's ineffective assistance of counsel ruling on direct appeal; explaining that "perhaps . . . defense counsel" had legitimate reason for the challenged decision, and an appellate court "should not . . . brand a defense attorney incompetent unless it can be truly confident all the relevant facts have been developed"].)

As the People observe, there are indications in the record that defendant wanted to prove his innocence at a jury trial. For example, and as described above, a July 2018 psychological evaluation report suggests defendant was aware of the then-recently effective mental health diversion law but hoped to have a jury trial in order to exonerate himself. Trial counsel is not ineffective for honoring a competent defendant's decision to go to trial rather than pursue mental health diversion. (Cf. *People v. Brown* (2014) 59 Cal.4th 86, 112 ["[a]fter having been advised by counsel, if a competent defendant decides . . . to present no mitigating evidence, he cannot later label counsel ineffective for honoring the defendant's own wishes"]; *People v. Lang* (1989) 49 Cal.3d 991, 1031 ["[t]o require defense counsel to present mitigating evidence over the defendant's objection would be inconsistent with an attorney's paramount duty of loyalty to the client and would undermine the trust, essential for effective representation, existing between attorney and client"].)

We therefore cannot conclude trial counsel was ineffective. If defendant is to succeed in sustaining his burden of establishing ineffective assistance, he must do so in a habeas proceeding.**4**

## D.    *Costs Imposed*

Defendant contends the trial court's imposition of costs without first determining his ability to pay violated due process principles, as articulated in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Anticipating the People's argument that he forfeited this claim by failing to raise it before the trial court, defendant insists the issue is not forfeited, because his claim implicates "fundamental rights," the imposition of costs via a due process violation "amounted to an unauthorized sentence," and "the fundamental constitutional rights at issue here are not subject to traditional forfeiture doctrines."

In addition to their argument defendant forfeited this claim by failing to raise it in the trial court, the People argue we should affirm the imposition of costs.

Because the forfeiture question and the merits of the issue rise or fall together, we conclude defendant's claim is both forfeited on appeal and lacks merit. (*People v.*

---

**4** We deny defendant's November 1, 2023 request that we take judicial notice of documents purportedly reflecting that in 2022 his trial counsel was charged with a felony and suspended from the practice of law. Even if true, such information by itself does not suggest that trial counsel was ineffective when representing defendant in the period of time leading up to the 2019 trial. (See *Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 713 [denying request for judicial notice "unnecessary to [the] decision"].)

For similar reasons, we also deny defendant's October 30, 2023 request that we reconsider the order denying his January 2020 request for judicial notice. As defendant explains in the October 2023 request, he seeks judicial notice of a document that " 'relates to whether that trial counsel was ineffective in failing to ask the trial court to consider [his] eligibility for mental health diversion.' " But as we explained above, defendant must demonstrate any ineffective assistance of counsel in a habeas proceeding.

*Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 465-466 [concluding an appellate claim was forfeited, and "[e]ven if not forfeited, the claim fails"].)

Defendant's due process claim—and by implication, his argument that the claim is not forfeited[5]—hinges on the analysis in *Dueñas*, finding an ability to pay hearing is required before imposing fines and fees, and we are not persuaded that this analysis is correct. Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp, supra,* at pp. 95-96.)

In the meantime, we join several other courts in concluding that the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)

Thus, defendant's due process claim pursuant to *Dueñas* lacks merit. And, because the due process claim lacks merit, defendant's arguments why the claim is not forfeited also lack merit.

---

[5] Because defendant's August 2019 sentencing hearing occurred seven months after *Dueñas* was published, under general principles of law, defendant has forfeited the issue on appeal. (See *People v. Scott* (1994) 9 Cal.4th 331, 351.)

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.


We concur:


/S/

HULL, Acting P. J.


/S/

DUARTE, J.